**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CIVIL NO.** |
| | § | **COMPLAINT IN CONDEMNATION** |
| **131.99 ACRES OF LAND, more or less,** | § | **[WITH DECLARATION OF TAKING]** |
| situated in STARR COUNTY, STATE | § | **[40 U.S.C. §3114]** |
| OF TEXAS; and RIO GRANDE CITY | § | |
| CONSOLIDATED INDEPENDENT | § | |
| SCHOOL DISTRICT, ET Al., | § | |

### DEFENDANT/CLAIMANT RIO GRANDE C.C.I.S.D.
### ORIGINAL ANSWER AND RESPONSE IN OPPOSITION TO
### PLAINTIFF'S *EX PARTE* MOTION FOR AN ORDER FOR IMMEDIATE DELIVERY OF POSSESSION

**COMES NOW** Defendant Rio Grande City Consolidated Independent School District, Defendant and Claimant herein, and files this, it's *Answer and Response In Opposition to Petitioner United States of America's Complaint In Condemnation and Ex Parte Motion For Order For Immediate Delivery of Possession* and, as grounds therefore, would respectfully show unto the Court the following:

**I.**

Defendant/Claimant Rio Grande City Consolidated Independent School District claims an interest in the whole of 131.99 acres of land, Part of Porcion 80, Abstract 555, of the J.A. De La Garza Falcon Grant, Starr County, Texas, being more particularly described as that certain tract of land being a part of 293.38 acres, more or less, situated in the South Central section of the J.A. De La Garza Falcon Grant, Abstract 555, Porcion 80, in Starr County, Texas and lying West of the Rio Grande City Point of Entry, North of the Rio Grande River, and East of the lands owned by the Fidel Salinas heirs, and South of the existing tree line.

**II.**

Defendant/Claimant Rio Grande City Consolidated Independent School District is the sole owner of all the property at issue in this proceeding.

**III.**

Plaintiff United States seeks an *ex parte* order directing Defendant/Claimant Rio Grande City Consolidated Independent School District "to immediately surrender possession" of their 131.99 acre tract of land so that U.S. Department of Homeland Security (DHS) and its unnamed contractors can survey, cut trees, demolish buildings, cut fences, and remove soil samples at any time and in any manner they wish. Of course Defendant/Claimant Rio Grande City Consolidated Independent School District intends to scrupulously follow all federal law requiring their land to be used in building some form of border fence between the United States and Mexico. Defendant/Claimant only asks that the United States also be scrupulous in following federal law before taking their property. Defendant/Claimant respectfully submits that DHS and the U.S. Department of Justice (DOJ), even with all of their experience and resources, have failed to follow federal law in condemning their land, so the government's *ex parte* motion should be denied, and no relief should be granted the government in this case.

Defendant/Claimant Rio Grande City Consolidated Independent School District offers one simple response in opposition to the government's motion: the government failed to negotiate with them before initiating condemnation proceedings even though federal law requires the government to do so.

Defendant/Claimant further objects to this condemnation proceeding on the grounds that the public purpose of the taking of the temporary interest in this property is outweighed by the potential harm that might be caused by this surveying, testing and other investigating work conducted by Petitioner, not only to the physical structures on said property but to the students who access this property for their education and the natural habitat that exists on said property.

**IV.**
**<u>8 U.S.C. § 1103(b) REQUIRES NEGOTIATION BEFORE CONDEMNATION</u>**

Congress requires DHS and DOJ to negotiate with landowners *before* commencing condemnation proceedings that are associated with construction of any border wall:

> (b) Land acquisition authority.
>    (1) The attorney General may contract for or buy any interest in land, including **temporary use rights**, adjacent to or in the vicinity of an international land border when the Attorney General deems the land essential to control and guard the boundaries and borders of the United States against any violation of this Act.
>    (2) The Attorney General may contact for or buy any interest in land identified pursuant to paragraph (1) as soon as the lawful owner of that interest fixes a price for it and the Attorney General considers that price to be reasonable.
>    (3) **When the Attorney General and the lawful owner of an interest identified pursuant to paragraph (1) are unable to agree upon a reasonable price**, the Attorney General may commence condemnation proceedings pursuant to section 3113 of title 40.

8 U.S.C. § 1103(b)(emphasis added.) The text of this passage plainly requires the government to attempt to negotiate "a reasonable price" for land *before* the government is allowed to "commence condemnation proceedings" including proceedings for "temporary use rights." *Id*. Defendant/Claimant Rio Grande City Consolidated Independent School District and (on information and belief) other border landowners would respectfully submit that no federal official or agent has ever attempted to negotiate any price or other key terms of access with Defendant/Claimant, reasonable or otherwise. Because the government failed to meet the specific standard established in 8 U.S.C. § 1103(b) for commencing this specific kind of borderland condemnation, the government was without power to commence this condemnation proceeding, and this case should be dismissed under Rule 71.1(i)(1)(C).

## V.
## THE CONSOLIDATED APPROPRIATION ACT REQUIRES NEGOTIATION BEFORE CONDEMNATION

Some time ago, Congress once again directed that DHS "shall consult with… local governments, Indian tribes, and property owners [like Defendant/Claimant Rio Grande City Consolidated Independent School District] to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which [border] fencing is to be constructed." Consolidated Appropriations Act, Pub. L. 110-161, 121

Stat. 1844 § 564(a)(2)(B)(ii) (Enacted Dec. 26, 2007). This text requires negotiations to cover specific items beyond price. These specific items happen to be important to the Defendant/Claimant Rio Grande City Consolidated Independent School District, but they have not had an opportunity to discuss with them DHS in any meaningful way.

The government may be expected to emphasize that while the text of the Consolidated Appropriations Act requires consultations, unlike 8 U.S.C. § 1 103 (b) the Consolidated Appropriations Act does not on its face require consultation as a condition precedent to the commencement of condemnation proceedings. Defendant/Claimant Rio Grande City Consolidated Independent School District would respond, however, that the structure, purpose, and history of the Consolidated Appropriations Act, as well as common sense, indicate that the Act's consultation requirement would be rendered meaningless if the government were empowered to seek condemnation before engaging in the requisite consultation beforehand. Congress does not enact meaningless statutes, and statutes must be construed wherever possible to make each provision effective. *Astoria Federal S&L Assn.* v, *Solimino,* 501 U.S. 104, 111-12 (1991) (rejecting a construction that would "reduce to insignificance those cases in which a provision could be used and render it "essentially without effect;" concluding "of course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof'); *Nachman Corp. v. Pension Ben. Guaranty Corp.,* 446 U.S. 359,385 (1980) (rejecting a "construction of the statute [that] would therefore render meaningless" part of it). Each "statute's language, structure, purpose, [and] legislative history" establish what questions Congress has decided, thus foreclosing inconsistent agency interpretations. *Thunder Basin Coal Co. v. Reich, us. Secretary of Labor,* 510 U.S. 200, 207 (1994); *Food & Drug Administration* v. *Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132-33 (2000)[2].

DHS also argues that the Consolidated Appropriations Act itself, specifically the Act's December 31, 2008 fence construction deadline, is what proves DHS's need for immediate and *ex parte* possession of the land at issue: "the 2008 Consolidated Appropriations Act subsequently modified [prior law] to impose a deadline for all fence construction of December

---

[2] When these factors indicate that Congress has directly spoken to an issue, Congress's view binds agencies regardless of whether statutory text could be clearer. *E.g. MCI Telecom. Corp. v. American Telephone & Telephone Co., 512 U.S. 218, 228 (1994); Immigration and Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 447 (1987); Bureau of Alcohol, Tobacco, and Firearms v. Federal Labor Relations Authority, 464 U.S. 89, 97 (1983)*

31,2008." Doc. 5-1 at 7-8. This quotation, and this argument, is at best an oversimplification of the Consolidated Appropriations Act, which only requires partial fence completion by December 31, 2008, and gives DHS discretion over which parts to complete and in what order. Consolidated Appropriations Act, Pub. L. 110-161, 121 Stat. 1844 § 564(a)(2)(B)(ii). Nowhere does any law suggest that if a fence is not built by December 31,2008, a fence cannot be built at all.

Of course, the most compelling reason why the December 31, 2008 deadline in the Consolidated Appropriations Act cannot justify dispensation of any consulting requirement by an ex *parte* order is that Congress wrote the consultation requirement immediately below the deadline, clearly expecting DHS to respect both.

## VI.

## **THE UNITED STATES IS NOT "ENTITLED TO IMMEDIATE POSSESSION" UNDER THE DECLARATION OF TAKING ACT**

The government's *ex parte* motion repeatedly argues that the Declaration of Taking Act automatically vests *immediate* title to the land in question in the government once the government's papers are filed, and that the United States is automatically "entitled to immediate possession," suggesting that this Court's role is limited to signing the ex *parte* order of possession sought by the government and fixing just compensation. Doc. 5-1 at 3-6. But the Declaration of Taking Act empowers this Court with critical discretion over all terms of possession:

> (d) Authority of court. On the filing of a declaration of taking, the court-
> (1) may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner; and
> (2) may make just and equitable orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges.

40 V.S.C. § 3114(d). Thus, this Court is in no way bound to accept the terms of possession sought by the government, and certainly need not do so on an *ex parte* basis.

The Defendant/Claimant has numerous terms of possession that they wish to discuss with the

government, and if necessary, seek from this Court. Defendant/Claimant believes that specific terms are only fair and necessary to protect them while they live on their own land, and to protect the education institution that they rely upon for income, all of which can be accomplished without Jeopardizing the "public purpose" that the government has written in support of its actions. *See* Doc. 4-2 at 4. After all, the government already proposes terms to protect any utilities, railroads, pipeline companies, or other businesses who have easements on the school district's land. *See* Doc. 2-2 at 10. If the government volunteers such interesting terms to businesses, Defendant/Claimant believes that they deserve an opportunity to seek terms to protect them as well. Defendant/Claimant would most efficiently meet with government officials in an attempt to reach agreement 011 the details before presenting them to the Court, but they will also be prepared to discuss appropriate terms in a hearing if the Court prefers.

Courts have invoked 40 U.S.C. § 3114( d) and its predecessors to temper the terms of possession sought by the government, just as the Defendant/Claimant Rio Grande City Consolidated Independent School District asks here. *See United States v. Certain Land of Manhattan,* 332 F.2d 679, 680-82 (2d Cir. 1964) (in exercise of power to fix date for possession, duty is imposed on court to see that such date for possession is in accord with equities); *United States v.* 6576.27 *Acres of Land,* 77 F.Supp. 244, 246 (D.N.D. 1948).

## VII.

Defendant/Claimant objects that Petitioner's request violates the Fifth Amendment to the United States Constitution in that the intended purpose of this taking does not constitute "public use" and the compensation is not a "just compensation". The work proposed does not qualify as work with the sovereigns police powers as it does not rationally serve the public interest or the public's welfare.

**WHEREFORE**, **PREMISES CONSIDERED**, Defendant/Claimant Rio Grande City Consolidated Independent School District prays that all relief requested by Petitioner be denied.

Respectfully submitted,

**RAMIREZ & GARZA, L.L.P.**

Attorneys & Counselors at Law
509 N. San Antonio
Rio Grande City, Texas 78582
TEL: (956) 487-7594
FAX: (956) 487-8300


By: **/s/ G. Allen Ramirez**
    **G. ALLEN RAMIREZ**
    State Bar No. 16501800
    Federal I.D. No. 7762


# CERTIFICATE OF SERVICE

I, G. Allen Ramirez hereby certify that on this the 27th day of February, 2008, a true and correct copy of the foregoing *Original Answer And Response* was forwarded to:

*Mr. Charles Wendlandt*
*Assistant U.S. Attorney*
*800 N. Shoreline, Suite 500*
*Corpus Christi, Texas 78401*

    **/s/ G. Allen Ramirez**
    **G. ALLEN RAMIREZ**